2023 IL App (3d) 210292

Opinion filed May 11, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0292 Circuit No. 14-CF-989 |
| | ) | |
| DEON DAVELLE WELLS, | ) ) | The Honorable Katherine S. Gorman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court, with opinion.
Justices McDade and Albrecht concurred in the judgment and opinion.

_____

**OPINION**

¶ 1    In 2014, when defendant Deon D. Wells was 19 years old, he was charged with first degree

murder (720 ILCS 5/9-1(a)(2) (West 2014)). Defendant pled guilty, and in 2016, the trial court

sentenced defendant to 40 years in prison. In 2017, defendant filed a postconviction petition,

arguing that he was denied effective assistance of counsel and that his sentence violated the Illinois

and United States Constitutions. The State filed a motion to dismiss, which the trial court granted.

On appeal, defendant argues that section 5-4.5-115 of the Unified Code of Corrections (Unified

Code) (730 ILCS 5/5-4.5-115 (West 2020)) violates the equal protection clauses of the Illinois

Constitution and the United States Constitution (Ill. Const. 1970, art. I, § 2; U.S. Const., amend.

XIV, § 1) because it grants parole review only to young offenders sentenced after June 1, 2019, not those sentenced prior thereto, like defendant. We hold that section 5-4.5-115 of the Unified Code does not violate equal protection principles and, therefore, affirm defendant's conviction and sentence.

¶ 2                                    I. BACKGROUND

¶ 3                                   A. Defendant's Case

¶ 4        On December 26, 2014, defendant Deon D. Wells, a 19-year-old, was charged with first degree murder in connection with the death of a 19-month-old child. On October 8, 2015, defendant pled guilty in exchange for a 40-year cap on his prison sentence. On January 15, 2016, the trial court sentenced defendant to 40 years in prison.

¶ 5        On October 12, 2017, defendant filed a *pro se* postconviction petition alleging ineffective assistance of counsel. The trial court appointed postconviction counsel to represent defendant. Defendant's counsel filed a supplemental postconviction petition, alleging that defendant's sentence violates the eighth amendment of the United States Constitution and the proportionate penalties clauses of the Illinois and United States Constitutions. The State filed a motion to dismiss defendant's original and supplemental postconviction petitions. On July 2, 2021, the trial court granted the State's motion to dismiss defendant's postconviction petitions.

¶ 6        On appeal, defendant raises a new argument. He contends that section 5-4.5-115 of the Unified Code violates the equal protection clauses of the Illinois Constitution and the United States Constitution.

¶ 7                            B. Section 5-4.5-115 of the Unified Code

¶ 8        In January 2017, House Bill 531 was introduced in the Illinois General Assembly and was enacted two years later as Public Act 100-1182, adding section 5-4.5-115 to the Unified Code.

2

Pub. Act 100-1182 (eff. June 1, 2019) (adding 730 ILCS 5/5-4.5-115). Section 5-4.5-115 of the Unified Code creates parole review for offenders under the age of 21 at the time of their offense. 730 ILCS 5/5-4.5-115(b) (West 2020). Under the statute, a person convicted of first degree murder is eligible for parole after serving 20 years if he was under 21 years old at the time of the offense and was sentenced after June 1, 2019. *Id.* In determining if a defendant should be granted parole, the Prisoner Review Board must "consider the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration." *Id.* § 5-4.5-115(j).

¶ 9    According to one of its sponsors, Senator Don Harmon, the legislation was introduced as a "response to the U.S. Supreme Court's decision in Miller against Alabama that laid out the fundamental notion that juvenile offenders are simply wired differently and have a propensity, much more so than older offenders, to be rehabilitated." 100th Ill. Gen. Assem., Senate Proceedings, May 31, 2017, at 31 (statement of Senator Harmon). It creates "a parole system that would permit long sentences to be revisited at ten years or fifteen or twenty years depending *** on the crime." *Id.* Senator Harmon explained:

"The Supreme Court—the U.S. Supreme Court's jurisprudence on youthful offenders is moving forward and is relying upon the—the brain science of development. And the science of brain development suggests that young people don't reach the age of fully formed brains at eighteen or at twenty-one. It's not till the mid-twenties, so we're still a few years away from the—the brain science here. *** [T]here is no judge on the planet who can look at a nineteen-year-old and say, I know for a fact that you're the kind of young person who is going to mature and rehabilitate in prison or you're the kind who is never going to get out of prison.

3

That's why we create this parole process, so that ten years or fifteen years down the road, we can have a second look at the offender and say whether or not it is appropriate for them to be released. *** To the concern over victims, a concern that I shared, victims were at the table. This is prospective only. It will not disturb any victims who are—whose offenders have already been imprisoned." *Id.* at 36.

¶ 10 One of the bill's House sponsors, Representative Barbara Flynn Currie, explained the proposed legislation as follows:

"All this measure does is just say that people who committed crimes, while they were under the age of 21, will after 10 years, in some cases 20 years, in some cases never, have the opportunity to go to the Prisoner Review Board, to say I am a different person, and I do think that it would be appropriate for me to be released. In no way is this a get out of jail free card. I have no reason to think that the Prisoner Review Board would apply any but the most stringent standards, to a decision whether to release somebody after 10 years or after 20. But I do think that our correctional system should be premised on the idea of rehabilitation, not just retribution. Rehabilitation so that when somebody has shown that they really are different they're really a changed person, we ought to take that seriously. We ought to take it into account. We ought to give them a second chance. *** Think about what we know *** about brain research that says that young people, and the subject of this Bill is young people, do not always have good judgment. They haven't always understood the consequences of their actions. *** This is a critical change in our criminal justice system. To recognize that young people should be given, if

4

they deserve it, a second chance." 100th Ill. Gen. Assem., House Proceedings , Nov. 28, 2018, at 47-48 (statement of Representative Currie).

According to one of the bill's cosponsors: "This Bill provides an opportunity for youthful offenders to rehabilitate, remediate, and reenter society." *Id.* at 50 (statement of Representative Parkhurst).

¶ 11 During the House debates, the following exchange took place between Representative C.D. Davidsmeyer and Representative Currie:

"DAVIDSMEYER: Is this only going forward? So if somebody who has committed a crime prior to this becoming law *** is not affected by this?

CURRIE: Absolutely, I'm glad you mentioned that. I meant to say so in my opening remarks. This Bill will not affect anybody who is currently serving time in the Illinois Correctional system. It is prospective only."

DAVIDSMEYER: So, you know *** one of the concerns of my local State's Attorneys was you know, making a promise to the victim's family that this person will never come back. Now they'll know going in *** that they may have an opportunity for parole in 10 years, or 20 years or whatever that date may be, correct?

CURRIE: And that was the reason we made the change because of the concern for victim families." *Id.* at 52-53 (statements of Representatives Davidsmeyer and Currie).

¶ 12 Representative Rita Mayfield stated:

"I do want to just reiterate that this Bill is prospective, meaning those individuals who are not currently incarcerated. This gives the State's Attorneys opportunities,

when they are doing their sentencing, to take in consideration, you know the length of the sentence when they are giving them. Knowing that after 10 or 20 years that individual may be getting out." *Id.* at 55 (statement of Representative Mayfield).

In addressing the scope of the bill, Representative Currie stated: "[T]he Sentencing Policy Advisory Committee did give us help in figuring out how many people might be coming before the Prisoner Review Board were this Bill to become Law, affecting as it does, only future criminals, and the number is probably under 100 a year." *Id.* at 61-62 (statement of Representative Currie).

¶ 13  In *Miller v. Alabama*, 567 U.S. 460, 479 (2012), the United States Supreme Court ruled that a defendant under 18 years of age cannot be sentenced to life in prison without the possibility of parole unless the sentencing court considers youth and various factors attendant to it because of "children's diminished culpability and heightened capacity for change." "[T]he evolving science on juvenile maturity and brain development" suggests that the principles of *Miller* may also apply to young adults. *People v. House*, 2021 IL 125124, ¶¶ 29, 32; see also *People v. Hilliard*, 2021 IL App (1st) 200112, ¶ 25 ("young adults (those between 18 and 21 years old) may rely on the evolving neuroscience regarding brain development in juveniles and its correlation to maturity underpinning the *Miller* decision" to support a constitutional challenge to a life sentence); *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 25 (young adults 20 years old and younger may "rely on the evolving neuroscience and societal standards underlying the rule in *Miller*" to support constitutional challenges to life sentences).

¶ 14  Section 5-4.5-115 of the Unified Code was enacted in response to "emerging case law" to address "youthful offenders under the age of 21." *People v. Green*, 2022 IL App (1st) 200749, ¶ 41. It seems to be "a remedial response to the constitutional issues recognized in *Miller* for both

juveniles and young adults." *People v. Elliott*, 2022 IL App (1st) 192294, ¶ 56. The legislation is one of the "significant steps" taken by the legislature "in implementing *Miller* protections." *People v. Montanez*, 2022 IL App (1st) 191930, ¶ 59.

¶ 15                                    II. ANALYSIS

¶ 16                    A. Timeliness of Defendant's Constitutional Attack

¶ 17        Ordinarily, a defendant forfeits an issue he does not raise in his postconviction petition. See *People v. Davis*, 2014 IL 115595, ¶ 13 (citing *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009)). However, a challenge to the constitutionality of a statute may be raised at any time, including for the first time on appeal. *People v. Roberts*, 331 Ill. App. 3d 15, 18 (2002) (citing *People v. Wright*, 194 Ill. 2d 1, 23 (2000), and *People v. Wooters*, 188 Ill. 2d 500, 510 (1999)). A defendant may attack a statute's constitutionality on appeal even if he did not raise the issue in the trial court in his postconviction petition. *People v. Villareal*, 2021 IL App (1st) 181817, ¶ 11 (citing *People v. Thompson*, 2015 IL 118151, ¶ 32, and *Davis*, 2014 IL 115595, ¶ 26). Thus, even though defendant did not raise the constitutionality of section 5-4.5-115 of the Unified Code in his postconviction petition, we will consider defendant's challenge on appeal.

¶ 18                    B. Constitutional Equal Protection Principles

¶ 19        "All statutes are presumed to be constitutional." *People v. Funches*, 212 Ill. 2d 334, 339 (2004). "The party challenging the constitutionality of a statute bears the burden of rebutting this presumption and clearly establishing a constitutional violation." *Id.* A court must construe a statute to uphold its constitutionality if reasonably possible. *Id.* We review the constitutionality of a statute *de novo*. *Id.* at 340.

¶ 20        The equal protection clause of the Illinois Constitution provides: "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection

7

of the laws." Ill. Const. 1970, art. I, § 2. Likewise, the equal protection clause of the United States Constitution provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.

¶ 21 In conducting an equal protection analysis, we apply the same standards under the United States Constitution and the Illinois Constitution. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 116. The constitutional right to equal protection guarantees that similarly situated individuals will be treated in a similar manner, unless the government can demonstrate an appropriate reason to treat them differently. *Id.* The equal protection clause does not forbid the legislature from drawing proper distinctions in legislation among different categories of people, but it prohibits the government from doing so on the basis of criteria wholly unrelated to the legislation's purpose. *Id.* When a legislative classification does not affect a fundamental right or discriminate against a suspect class, we apply a rational basis scrutiny and consider whether the challenged classification bears a rational relationship to a legitimate governmental purpose. *People v. Masterson*, 2011 IL 110072, ¶ 24.

¶ 22 "Under the rational-basis test, judicial review of legislative classifications is limited and generally deferential ***." *In re A.A.*, 181 Ill. 2d 32, 38 (1998). "[A] challenged classification may be invalidated only if it is arbitrary or bears no reasonable relationship to the pursuit of a legitimate State goal." *People v. P.H.*, 145 Ill. 2d 209, 229 (1991) (citing *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 371 (1986)). The classification must be upheld if any set of facts can reasonably be conceived to justify it. *A.A.*, 181 Ill. 2d at 38. In an equal protection challenge, " '[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might

8

support it.' " *Searle Pharmaceuticals, Inc. v. Department of Revenue*, 117 Ill. 2d 454, 465 (1987) (quoting *Madden v. Kentucky*, 309 U.S. 83, 88 (1939)).

¶ 23    The rational basis test does not require that the legislature ever state the purpose or rationale supporting its classification. *Cutinello v. Whitley*, 161 Ill. 2d 409, 420 (1994). "It requires only that there be a reasonable relationship between the challenged legislation and a conceivable, and perhaps unarticulated, governmental interest." *Id.*; see *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992) ("Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification"). "[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Federal Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993); *Miller v. Department of Public Aid*, 94 Ill. App. 3d 11, 20 (1981). "Where any plausible reasons for the legislature's actions can be discerned, this court's inquiry ends." *Miller*, 94 Ill. App. 3d at 20.

¶ 24    When reviewing a statute challenged as violating equal protection, we must give "high deference" to the legislature (*People v. Gale*, 376 Ill. App. 3d 344, 359 (2007)) and exercise "judicial restraint" (*Beach Communications*, 508 U.S. at 314). We may not second-guess the wisdom of the legislature in creating the classification. See *United States v. Carolene Products Co.*, 304 U.S. 144, 154 (1938); see also *Beach Communications*, 508 U.S. at 313 ("[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."). Nor may we question if the classification is the best means to achieve the goals of the legislature. See *Gale*, 376 Ill. App. 3d at 359; *Vermouth v. Corrothers*, 827 F.2d 599, 603 (9th Cir. 1987); see also *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 378 (1973) (rational-basis review does not allow courts "to speculate as to whether the statute is unwise or whether the evils

9

sought to be remedied could have been regulated in some other manner"). "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because *** [']in practice it results in some inequality.' " *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911)).

¶ 25 "Prospective application of a new doctrine or rule of law does not violate the equal protection of laws under either the Federal or Illinois constitution." *Coney v. J.L.G. Industries, Inc.*, 97 Ill. 2d 104, 125 (1983); *People v. Hunter*, 2016 IL App (1st) 141904, ¶ 61. "[N]either the fourteenth amendment nor the Illinois Constitution prevents statutes and statutory changes from having a beginning, nor does either prohibit reasonable distinctions between rights as of an earlier time and rights as they may be determined at a later time." *People v. Richardson*, 2015 IL 118255, ¶ 10; see also *Sperry & Hutchinson Co. v. Rhodes*, 220 U.S. 502, 505 (1911) ("[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time."). Even though the legislature might have granted benefits retroactively, it is not required to do so when it appears to have a legitimate reason for applying them prospectively. See *Frazier v. Manson*, 703 F.2d 30, 36 (2d Cir. 1983).

¶ 26 1. Equal Protection and Prospective Sentencing Laws

¶ 27 Courts "generally defer to the legislature in the sentencing arena because the legislature is institutionally better equipped to gauge the seriousness of various offenses and to fashion sentences accordingly." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). "The legislature's discretion in setting criminal penalties is broad, and courts generally decline to overrule legislative determinations in this area unless the challenged penalty is clearly in excess of the general constitutional limitations on this authority." *Id.*

¶ 28       "[T]here is no requirement that two persons convicted of the same offense receive identical sentences." *Williams v. Illinois*, 399 U.S. 235, 243 (1970). "It is perfectly proper for the [l]egislature to create a new sentencing procedure which operates prospectively only." *People v. Gilchrist*, 183 Cal. Rptr. 709, 713 (Ct. App. 1982). "A legislature may prospectively reduce the maximum penalty for a crime even though prisoners sentenced to the maximum penalty before the effective date of the act would serve a longer term of imprisonment than one sentenced to the maximum term thereafter." *Frazier*, 703 F.2d at 36. Discrepancies in sentencing among defendants who committed the same or similar crimes at different times are not unconstitutional under equal protection principles because such discrepancies are inescapable whenever the legislature raises or lowers the penalties for an offense. See *United States v. Goncalves*, 642 F.3d 245, 253 (1st Cir. 2011). "There is no denial of equal protection in having persons sentenced under one system for crimes committed before [a specific date] and another class of prisoners sentenced under a different system." *Foster v. Washington State Board of Prison Terms & Paroles*, 878 F.2d 1233, 1235 (9th Cir. 1989).

¶ 29       Our supreme court has determined that amending a sentencing statute prospectively does not violate equal protection. See *People v. Grant*, 71 Ill. 2d 551 (1978). On February 1, 1978, the legislature amended a sentencing provision and made it applicable only to defendants who had not yet been sentenced as of its effective date. *Id.* at 561. The *Grant* defendant, who was sentenced nearly three years earlier, argued that his equal protection rights were violated because there was no rational basis for distinguishing between individuals sentenced after the statute's effective date and those, like him, who were sentenced prior to that date. *Id.* Our supreme court rejected the defendant's equal protection challenge, stating:

11

"Without a doubt, the power of the legislature to determine punishment is subject to constitutional limitations. Nevertheless, the ability to elect to be sentenced under a law enacted after the date of the commission of a crime is not a constitutional right but a benefit conferred solely by statute. It is not unconstitutional for the legislature to confer such benefit only prospectively, neither is it unconstitutional for the legislature to specify 'a classification between groups differently situated, so long as a reasonable basis for the distinction exists.' [Citation.] In this instance, the legislature distinguished between those defendants, on the one hand, who had not yet been accorded any sentencing hearings prior to the cut-off date, and those, on the other hand, whose sentences, already imposed, would require remandments for additional sentencing hearings. We find this to be a reasonable basis for distinction and, therefore, no constitutional denial of equal protection." *Id.* at 561-62.

¶ 30        Nearly 40 years later, our supreme court relied on *Grant* to uphold a legislative classification that applied prospectively only. See *Richardson*, 2015 IL 118255, ¶ 10. In *Richardson*, the defendant was charged with criminal offenses in June 2013, when he was 17 years old. *Id.* ¶ 3. At that time, the Juvenile Court Act of 1987 only applied to minors under 17 years of age. *Id.*; see 705 ILCS 405/5-120 (West 2012). In July 2013, the legislature amended the Juvenile Court Act so that it applied to minors under 18 years of age beginning on the statute's effective date of January 1, 2014. *Richardson*, 2015 IL 118255, ¶ 3. The amendment included a saving clause providing that its changes only " 'apply to violations or attempted violations committed on or after the effective date of this amendatory Act.' " *Id.* (quoting 705 ILCS 405/5-120 (West Supp. 2013)). The defendant argued that the saving clause violated his equal protection rights because

he was 17 when he committed his crimes. *Id*. ¶ 1. Our supreme court disagreed, finding the challenged legislative classification distinguishing between those who committed violations before and after the statute's effective date "is rationally related to the legislature's goal of including 17-year-olds within the jurisdiction of the Juvenile Court Act." *Id.* ¶ 10. The court explained:

"The saving clause reasonably achieves the amendment's purpose of including 17-year-olds within the jurisdiction of the Juvenile Court Act because it does so in a manner that avoids confusion and delay and also preserves judicial resources. By limiting the amendment's application to violations or attempted violations committed on or after the effective date, an accused, as well as the courts, are on notice as to whether the Juvenile Court Act will apply in certain proceedings. *** We acknowledge that statutory amendments which apply to some but not to others may appear unfair to a certain extent. This is particularly true with ameliorative amendments such as the amendment here. Nevertheless, statutory changes must have a beginning. The simple fact that the saving clause precludes the amendment from applying to some 17-year-olds such as defendant does not defeat its constitutionality. Here, the legislature's chosen effective date bears a rational relationship to the legislature's goal of extending the exclusive jurisdiction provision of the Juvenile Court Act." *Id.*

¶ 31    Thereafter, in *Hunter*, 2016 IL App (1st) 141904, ¶¶ 60-61, the First District held that section 5-4.5-105 of the Unified Code (730 ILCS 5/5-4.5-105 (West 2016)), which requires trial courts to consider mitigating factors when sentencing a juvenile, does not violate the equal protection clause even though it applies only to individuals sentenced after the statute's effective

13

date. The court cited *Richardson* in support of its decision. *Hunter*, 2016 IL App (1st) 141904, ¶ 61. Like section 5-4.5-115 of the Unified Code, the legislature enacted section 5-4.5-105 of the Unified Code in response to *Miller*. See *Montanez*, 2022 IL App (1st) 191930, ¶ 59.

¶ 32 Our sister states have also determined that equal protection principles allow ameliorative sentencing provisions to be applied prospectively only. See, *e.g.*, *State v. Ross*, 95 P.3d 1225, 1235 (Wash. 2004) (rejecting claim that prospective application of sentencing amendments violated equal protection by "favoring offenders who committed crimes after the amendments' effective date"); *Ex parte Zimmerman*, 838 So. 2d 408, 412 (Ala. 2002) (finding the defendant's equal protection rights were not violated by prospective sentencing statute because defendant was "treated similarly to all other offenders sentenced under the law in effect at the time he was sentenced"); *Carter v. State*, 512 N.E.2d 158, 170 (Ind. 1987) (holding the defendant was not denied equal protection where he was sentenced "according to the statute in effect at that time"); *Bowen v. Recorder's Court Judge*, 179 N.W.2d 377, 378 (Mich. 1970) (holding prospective application of sentencing amendment did not violate the defendant's equal protection rights); *Clayton v. Iowa District Court*, 907 N.W.2d 824, 828-30 (Iowa Ct. App. 2017) (finding no equal protection violation where ameliorative sentencing provision applied only prospectively and did not apply to the defendant); *People v. Smith*, 185 Cal. Rptr. 3d 68, 73 (Ct. App. 2015) ("Prospective application of the ameliorative benefits of second strike sentencing under Proposition 36 does not violate equal protection guarantees."); *Burch v. Tennessee Department of Correction*, 994 S.W.2d 137, 138-39 (Tenn. Ct. App. 1999) (rejecting the defendant's claim that his equal protection rights were violated by imposing "a different penalty upon him than upon an individual guilty of an identical crime, just because of his date of sentencing"). No denial of equal protection occurs when the legislature enacts a statute lowering the punishment for a crime with

14

prospective relief only, thereby making it inapplicable to those already sentenced. See *State v. Clayton*, 89 A.2d 96, 98 (N.J. Super. Ct. App. Div. 1952).

¶ 33        Additionally, federal courts have consistently upheld the nonretroactivity of the Fair Sentencing Act (FSA), which reduced penalties for defendants sentenced after a certain date. See *Dorsey v. United States*, 567 U.S. 260, 281 (2012); *United States v. Black*, 737 F.3d 280, 287 (4th Cir. 2013); *United States v. Swangin*, 726 F.3d 205, 207 (D.C. Cir. 2013); *United States v. Reeves*, 717 F.3d 647, 651 (8th Cir. 2013); *United States v. Lucero*, 713 F.3d 1024, 1027-28 (10th Cir. 2013); *United States v. Hippolyte*, 712 F.3d 535, 542 (11th Cir. 2013); *United States v. Speed*, 656 F.3d 714, 720 (7th Cir. 2011); *United States v. Reevey*, 631 F.3d 110, 115 (3d Cir. 2010). "Disparate treatment" among inmates based on their date of sentencing is "plainly rational" because " 'discrepancies among persons who committed similar crimes are inescapable whenever Congress raises or lowers the penalties for an offense.' " *Speed*, 656 F.3d at 720 (quoting *Goncalves*, 642 F.3d at 253). "Someone, in the end, will always be left behind to live with the earlier, harsher penalty, whenever Congress chooses to amend a sentencing statute." *Id.* "Whatever arbitrariness there may be is therefore unavoidable." *Id.*

¶ 34                              2. Equal Protection and Parole Eligibility

¶ 35        "[P]arole laws do not fix punishment but direct the manner of imposing sentence by the court." *People v. Moses*, 288 Ill. 281, 287 (1919) (citing *Featherstone v. People*, 194 Ill. 325 (1901)). Parole does not end or change the length of a sentence but "authoriz[es] service of the sentence outside the penitentiary." *People ex rel. Abner v. Kinney*, 30 Ill. 2d 201, 205 (1964).

¶ 36        Just as the legislature is in the best position to make changes to sentencing statutes (see *Sharpe*, 216 Ill. 2d at 487), the determination of when a prisoner shall become eligible for parole is "purely a legislative function." *People v. Rucker*, 364 Ill. 371, 375 (1936). "[A] prisoner has no

15

right, except as the legislature gives it, to be paroled." *People ex rel. Kubala v. Kinney*, 25 Ill. 2d 491, 495 (1962). "[I]t is clear that parole in Illinois is in the nature of a gift and as such, its conditions can be changed at the discretion of the legislature." *Harris v. Irving*, 90 Ill. App. 3d 56, 62 (1980). "[T]he legislature has the power to make changes in the terms and conditions for parole" and make those changes effective at any time. *Kubala*, 25 Ill. 2d at 494-95. It is improper for courts to judge "the wisdom of the legislative plan for parole of prisoners committed to the Department of Corrections." *People v. Williams*, 66 Ill. 2d 179, 188 (1977).

¶ 37        Both state and federal courts have found that prospective parole eligibility laws do not violate equal protection principles. See *Whatley v. State*, 228 So. 3d 963, 964 (Miss. Ct. App. 2017); *Bergee v. South Dakota Board of Pardons & Paroles*, 2000 SD 35, ¶ 23, 608 N.W.2d 636; *Mayabb v. Johnson*, 168 F.3d 863, 870-71 (5th Cir. 1999)). " 'A state's decision to expand parole eligibility only on a prospective basis is rational' and does not violate the constitutional rights of offenders convicted previously." *Whatley*, 228 So. 3d at 964 (quoting *Fluker v. State*, 200 So. 3d 1148, 1149 (Miss. Ct. App. 2016)); see also *Bergee*, 2000 SD 35, ¶ 25, 608 N.W.2d 636 (finding "inmates' equal protection rights were not violated by *** application of the old parole laws to those sentenced for crimes committed before the effective date" of the new parole laws).

¶ 38                3. Equal Protection and Section 5-4.5-115 of the Unified Code

¶ 39        Defendant contends that section 5-4.5-115 of the Unified Code violates principles of equal protection because it does not apply to defendants who, like him, were under 21 years of age when they committed their crimes but were sentenced prior to June 1, 2019. Defendant concedes that section 5-4.5-115 does not affect a fundamental right or discriminate against a suspect class, so rational basis scrutiny applies. See *Masterson*, 2011 IL 110072, ¶ 24. Defendant contends that

16

granting parole eligibility only to defendants sentenced after June 1, 2019, has no rational basis. We disagree.

¶ 40    First, "[i]mprovement in sentencing is [a] rational government purpose." *Foster*, 878 F.2d at 1235 (citing *Mistretta v. United States*, 488 U.S. 361 (1989)). In 2015, our appellate court urged the legislature to improve sentencing laws in this state for minors and young adults. See *People v. Decatur*, 2015 IL App (1st) 130231, ¶ 18 (asking the legislature "to revisit the sentencing schemes that result in *** lengthy imprisonment terms without allowing for adequate consideration of mitigating factors such as age"); *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 80 ("urging the legislature to expeditiously address the inability of our present statutory scheme to provide allowances for the special considerations that youth warrants"). In 2019, our legislature created section 5-4.5-115 of the Unified Code, which allows those who committed crimes when they were younger than 21 years of age "a meaningful opportunity for release" from prison. *People v. Beck*, 2021 IL App (5th) 200252, ¶¶ 22, 25, 26. As Senator Harmon explained, the impetus for the legislation was *Miller*, 567 U.S. 460, in which the United States Supreme Court determined that juvenile offenders are much more likely than adults to be rehabilitated. See 100th Ill. Gen. Assem., Senate Proceedings, May 31, 2017, at 31 (comments of Senator Harmon). Based on "the science of brain development" suggesting that brains of young adults are still not fully formed, the legislature created the "parole process" set forth in section 5-4.5-115. See *id.* Thus, section 5-4.5-115 of the Unified Code is rationally related to the legitimate government purpose of improving sentencing laws for young adults. Therefore, it does not violate equal protection principles.

¶ 41    Furthermore, the legislature's decision to grant parole eligibility only prospectively to defendants sentenced after June 1, 2019, is rationally related to the legislature's goal of implementing sentencing reform "one step at a time." *People v. Anderson*, 148 Ill. 2d 15, 31

17

(1992); *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007). "The legislature need not deal with all conceivable evils at once; it may proceed one step at a time." *Anderson*, 148 Ill. 2d at 31. "Prospective application allows the [l]egislature to control the risk of new legislation by limiting its application." *People v. Lynch*, 146 Cal. Rptr. 3d 811, 817 (Ct. App. 2012). If the legislature subsequently determines the benefits of the legislation outweigh its costs, then it may extend the legislation's benefits retroactively. *Id.*; see also *Anderson*, 148 Ill. 2d at 31 ("Should the legislature see fit to broaden the scope of the statute to include other possible groups, it is free to do so."). "Requiring the [l]egislature to apply retroactively any change in the law benefitting criminal defendants imposes unnecessary additional burdens to the already difficult task of fashioning a criminal justice system that protects the public and rehabilitates criminals." *Lynch*, 146 Cal. Rptr. 3d at 817. Because the prospective application of parole eligibility under section 5-4.5-115 is reasonably related to the legitimate government interest of implementing change "one step at a time," the statute does not violate equal protection principles.

¶ 42   In Illinois, "prospective application of a statute is preferred." *Cooper v. Chicago Transit Authority*, 224 Ill. App. 3d 321, 324 (1991). This preference is codified in section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2020)), which provides: "No new law shall be construed *** in any way whatever to affect any *** offense or act *** committed or done, or any penalty, forfeiture or punishment *** incurred *** before the new law takes effect ***." "[S]ection 4 represents a clear legislative indication that the retroactive application of substantive statutory changes is forbidden." *Caveney v. Bower*, 207 Ill. 2d 82, 95 (2003). Thus, section 5-4.5-115 of the Unified Code, which applies a new parole process prospectively to those sentenced after its effective date, is rationally related to our State's interest in applying new laws prospectively, not retroactively.

18

¶ 43        Moreover, "the State has a weighty interest in the finality of *** sentences." *In re N.G.*, 2018 IL 121939, ¶ 59. Prospective-only application of sentencing laws based on sentencing date "maintains the integrity of sentences that were valid when imposed and ensures the discretion exercised in the charging, plea bargaining, and sentencing decisions of the People and the trial courts is not destabilized or nullified." *People v. Cruz*, 143 Cal. Rptr. 3d 742, 753 (Ct. App. 2012). Thus, section 5-4.5-115 of the Unified Code, which applies a new parole process prospectively to individuals sentenced after its effective date, is rationally related to the government's interest in ensuring the finality of sentences.

¶ 44        In discussing the proposed legislation that became section 5-4.5-115 of the Unified Code, it was important to legislators that the new parole process be applied only prospectively to criminals not yet sentenced. See 100th Ill. Gen. Assem., Senate Proceedings, May 31, 2017, at 31, 36; 100th Ill. Gen. Assem., House Proceedings, Nov. 28, 2018, at 47-48, 52-53, 55, 62. It was not necessary for the legislature to articulate any purpose for enacting the statute or applying it prospectively. See *Cutinello*, 161 Ill. 2d at 420. A statute passes constitutional muster as long as "any plausible reasons for the legislature's action can be discerned." *Miller*, 94 Ill. App. 3d at 20. As set forth above, there were many rational bases supporting the legislature's enactment of section 5-4.5-115 of the Unified Code and its prospective application. Thus, the statute passes constitutional muster, and we reject defendant's constitutional challenge.

¶ 45                                III. CONCLUSION

¶ 46        The judgment of the circuit court of Peoria County is affirmed.

¶ 47        Affirmed.

19

*People v. Wells*, 2023 IL App (3d) 210292

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 14-CF-989; the Hon. Katherine S. Gorman, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Bryon Kohut, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |