**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230196-U

Order filed December 5, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| | ) | Appeal No. 3-23-0196 |
| v. | ) | Circuit No. 18-CF-1855 |
| | ) | |
| DEANTHONY E. WILLIAMSON, | ) ) | Honorable Vincent F. Cornelius, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Peterson and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: (1) The evidence was insufficient to sustain defendant's conviction for driving while his license was revoked. (2) Defendant's conviction for unlawful use of a weapon by a felon did not violate the one-act, one-crime rule. (3) The unlawful use of a weapon by a felon statute is facially constitutional under both the United States and Illinois Constitutions. (4) Defendant forfeited his claim of error that the trial court considered an improper aggravating factor in sentencing. Affirmed in part and reversed in part.

¶ 2    Defendant, Deanthony E. Williamson, appeals his convictions for aggravated discharge of

a firearm, unlawful use of a weapon by a felon (UUWF), and driving while his license was revoked

(DWLR). Defendant argues (1) the evidence was insufficient to support his conviction for DWLR, (2) his UUWF conviction violated the one-act, one-crime rule, (3) his UUWF conviction is facially unconstitutional under both the United States and Illinois Constitutions, and (4) the trial court improperly relied on his vacated convictions as a factor in aggravation in sentencing defendant. For the following reasons, we reverse defendant's DWLR conviction and otherwise affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4         In September 2018, defendant received traffic citations for disobeying a stop sign (625 ILCS 5/11-1204(b) (West 2018)), DWLR (*id.* § 6-303(a)), and operating a motor vehicle when his registration was suspended for noninsurance (*id.* § 3-708). Thereafter, a grand jury returned an indictment which included aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2018)), UUWF (*id.* § 24-1.1(a)), and possession of a firearm without a firearm owner's identification (FOID) card (430 ILCS 65/2(a)(1) (West 2018)).

¶ 5         Defendant elected a bench trial, and he proceeded *pro se*. The following evidence was adduced. At approximately 11 p.m. on September 23, 2018, a resident of Hobbs Avenue in Joliet, Illinois, heard a vehicle with a loud muffler driving around her neighborhood for 20 minutes. Later that night, her husband woke her up and told her he heard a gunshot. She went to her children's bedroom and noticed powder from the drywall on her children and a bullet hole in the wall. She called the police who searched the home and found projectile holes in a shutter adjacent to the children's bedroom, the drywall in the children's bedroom, and a bedroom closet. A neighbor informed the officers he saw a man fire a shot in the direction of the home from a nearby alley and that man was driving a silver sedan earlier that night. Shortly after, the officers observed a silver sedan with a loud muffler drive around the scene. The driver's side window was down, and an

2

object was extended out of the window, pointing at the officers. When the officers approached, the sedan sped off.

¶ 6    The officers pursued the sedan. The sedan failed to stop at a stop sign and parked in a nearby backyard. Defendant ran from the sedan while holding a rifle, which he threw into a backyard during his flight. The officers apprehended defendant and found a bag on his person containing 36 rounds of .30-caliber ammunition and gloves. The officers recovered the rifle and discovered .30-caliber bullets inside its magazine, which had the same markings as the bullets found on defendant's person. The officers searched the sedan and found the same type of ammunition on the floorboard. Near the scene, the officers recovered a lead-based projectile, a portion of copper jacketing, and a .30-caliber shell casing. Expert testimony provided (1) a glove found on defendant's person was either in the environment of a discharged firearm or contacted a gunshot residue related item, (2) the rifle discarded by defendant was operable, and (3) the shell casing and portion of copper jacketing recovered at the scene were fired by the same rifle. Defendant had a prior felony conviction and was on mandatory supervised release (MSR) when these offenses occurred. The State admitted into evidence a one-page abstract from the Secretary of State, stating defendant had "no supervisions on record."

¶ 7    The court found defendant guilty of disobeying a stop sign, DWLR, aggravated discharge of a firearm, UUWF, and possession of a firearm without a FOID card. The court found defendant not guilty of operating a motor vehicle when his registration was suspended for noninsurance. The court denied defendant's posttrial motion.

¶ 8    At sentencing, the court merged defendant's conviction for possession of a firearm without a FOID card into the UUWF conviction and sentenced defendant to 12 years' imprisonment for aggravated discharge of a firearm to be served concurrently with a 6-year term of imprisonment

for UUWF. The court entered judgment for costs on the disobeying a stop sign and DWLR convictions. Defendant filed a motion to reconsider his sentence, arguing his sentence was excessive because it violated the one-act, one-crime rule and the court failed to consider factors in mitigation. Defendant additionally asked the court to award him certain credit against his sentence. The court awarded defendant credit against his sentence but denied his motion in all other respects.

¶ 9        This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11        On appeal, defendant argues (1) the evidence was insufficient to support his conviction for DWLR; (2) his UUWF conviction violated the one-act, one-crime rule; (3) his UUWF conviction is facially unconstitutional under both the United States and Illinois Constitutions; and (4) the court improperly relied on his vacated convictions as a factor in aggravation in sentencing. We address each contention in turn.

¶ 12                              A. Sufficiency of the Evidence

¶ 13        When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found each essential element of the crime beyond a reasonable doubt. *People v. Cline*, 2022 IL 126383, ¶ 25. In a bench trial, the judge is the trier of fact and assigns weight to the testimony, resolves conflicts in the evidence, and draws reasonable inferences from the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009). It is not our role to retry the defendant. *People v. Gray*, 2017 IL 120958, ¶ 35. We will reverse a criminal conviction only when the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Rowell*, 229 Ill. 2d 82, 98 (2008).

¶ 14 Here, defendant argues the evidence was insufficient to sustain his conviction for DWLR. "It is well settled that the only elements necessary to prove the offense of [DWLR] are (1) the act of driving a motor vehicle on the highways of this State, and (2) the fact of the revocation of the driver's license or privilege." (Internal quotation marks omitted.) *People v. Jackson*, 2013 IL 113986, ¶ 16; 625 ILCS 5/6-303(a) (West 2018). Defendant concedes the first element but argues no evidence was presented as to the second element—that his license was revoked at the time he was driving.

¶ 15 We conclude the evidence failed to establish defendant's license was revoked on the date in question. The only evidence of record pertaining to his driver's license status is a one-page abstract from the Secretary of State, providing there were no supervisions on record. Thus, the evidence failed to demonstrate his license was revoked, an essential element of the offense, and we reverse defendant's conviction outright.

¶ 16 In coming to this conclusion, we reject the State's position the evidence of record sufficiently demonstrated defendant's license was revoked. First, the State relies on portions of the aforementioned abstract providing that defendant's continuous license date and issue date both contain zeros to demonstrate defendant's license was revoked. This argument is unconvincing as the abstract likewise provides zeros for defendant's weight and height, which certainly cannot be true. Second, the State points to the PSI providing defendant was convicted in 2011 of DWLR to seemingly suggest defendant's license remained revoked in 2018. The State's reliance on the PSI as evidence of guilt is, at best, questionable. The PSI was created and made a part of the record *after* the court found the defendant guilty. In any event, the PSI fails to demonstrate defendant's driver's license was revoked on the date in question, even when viewed in the light most favorable to the State.

5

¶ 17                                    B. One-Act, One-Crime Rule

¶ 18        Defendant next argues his UUWF conviction violates the one-act, one-crime rule because it was based on the same physical act as his conviction for aggravated discharge of a firearm.

¶ 19        The one-act, one-crime rule stands for the proposition a defendant may not be convicted of multiple offenses when those offenses are based on precisely the same physical act. *People v. Coats*, 2018 IL 121926, ¶ 11. We use a two-step analysis in our *de novo* review of this question. *People v. Smith*, 2019 IL 123901, ¶ 15. First, we determine whether the defendant's conduct consisted of a single physical act or separate acts. *Id.* If the defendant's convictions are based on precisely the same physical act, multiple convictions are improper. *Id.* However, if the defendant's conduct is based on more than one physical act, we then determine whether any of the offenses are lesser-included offenses. *People v. Reese*, 2017 IL 120011, ¶ 79. If not, then multiple convictions are proper. *Id.*

¶ 20        A defendant commits UUWF if he knowingly possesses a firearm or firearm ammunition and has previously been convicted of a felony (720 ILCS 5/24-1.1(a) (West 2018)), while, as charged in this case, a defendant commits aggravated discharge of a firearm when he knowingly or intentionally discharges a firearm at or into a building he knows or reasonably should know to be occupied and does so from a place or position outside that building (*id.* § 24-1.2(a)(1)).

¶ 21        Although both convictions inherently require a common act, possession of a firearm, the offenses are not based on precisely the same physical act. See *People v. Lobdell*, 121 Ill. App. 3d 248, 252 (1983) ("A person can be guilty of two offenses when a common act is part of both offenses or part of one offense and the only act of the other offense."); *People v. King*, 66 Ill. 2d 551, 566 (1977) (defining "act" as "any overt or outward manifestation which will support a different offense"). For instance, the record establishes defendant possessed a firearm *and*

intentionally discharged the firearm into a building. To commit aggravated discharge of a firearm, defendant needed to commit the additional act of discharging the firearm. See *Coats*, 2018 IL 121926, ¶ 16 (collecting cases). Stated another way, if defendant had not discharged the firearm, he could only have been convicted of UUWF and not aggravated discharge of a firearm. See *People v. Tolentino*, 409 Ill. App. 3d 598, 610 (2011) (explaining aggravated discharge of a firearm requires proof of a separate and distinct act in addition to possessing the firearm). Therefore, because possession and discharge are distinct acts, we conclude defendant committed multiple physical acts. See *People v. Myers*, 85 Ill. 2d 281, 288-89 (1981) (holding the defendant's acts were not one physical act despite occurring close in time).

¶ 22      Given this conclusion, we would ordinarily determine whether either of these offenses is a lesser-included offense. However, defendant does not make this argument. Thus, our analysis ends here. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 23      Accordingly, we find it necessary to reject defendant's reliance on *People v. Glenn*, 363 Ill. App. 3d 170, 176 (2006), which held that the defendant could not be convicted of both unlawful possession and unlawful delivery of cocaine where both convictions were based on the same cocaine. *Glenn* has little applicability after the supreme court's holding in *Coats* where the supreme court rejected the argument that where the "crux" or "essence" of the crime are the same, multiple convictions cannot stand. *Coats*, 2018 IL 121926, ¶¶ 18-20.

¶ 24                              C. Constitutionality of UUWF Statute

¶ 25      Next, defendant contends the UUWF statute (720 ILCS 5/24-1.1(a) (West 2018)) is facially unconstitutional as it improperly burdens the right to keep and bear arms as guaranteed by the second amendment to the United States Constitution (U.S. Const., amend. II) and article I, section

7

22, of the Illinois Constitution (Ill. Const. 1970, art. I, § 22). While defendant did not assert this claim before the trial court, in criminal cases, a facial constitutional challenge to a statute may be raised for the first time on appeal. *People v. McCarty*, 223 Ill. 2d 109, 123 (2006).

¶ 26　　　　Statutes are presumed to be constitutional and must be construed to uphold their constitutionality whenever reasonably possible. *People v. Wells*, 2023 IL App (3d) 210292, ¶ 19. Therefore, the challenging party has the burden of establishing a statute is unconstitutional. *People v. McKown*, 2022 IL 127683, ¶ 29. The party must establish "no set of circumstances exists under which [the statute] would be valid." *Caulkins v. Pritzker*, 2023 IL 129453, ¶ 29. Constitutional challenges present a question of law, which we review *de novo. Id.* ¶ 28.

¶ 27　　　　　　　　　　　　　　　1. *United States Constitution*

¶ 28　　　　Defendant argues the UUWF statute is facially unconstitutional because a lifetime prohibition of possession of a weapon as a felon is inconsistent with the historical traditions of firearm regulation. We apply a two-part analysis when determining whether a firearm regulation violates the second amendment. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 26-27 (2022). We first determine whether the conduct at issue is protected under the second amendment's text and, if so, we consider whether the regulation justifiably comports with history and tradition. *Id.*

¶ 29　　　　Applying this framework, we recently upheld the constitutionality of the UUWF statute (720 ILCS 5/24-1.1(a) (West 2018)). *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 25, 33. First, we concluded the conduct to be regulated by the UUWF statute—possession of a firearm—falls within the second amendment's text. *Id.* ¶ 25. The amendment's plain language guaranteeing the "right of the people to keep and bear Arms" covers the possession of firearms and does not exclude felons from "the people" to whom it applies. U.S. Const., amend. II; *Travis*, 2024 IL App (3d)

8

230113, ¶ 25. Second, our historical analysis concluded the UUWF statute is consistent with this country's history and tradition of disarming individuals who violate the law or are deemed dangerous. *Travis*, 2024 IL App (3d) 230113, ¶¶ 27-33. Although laws specifically prohibiting felons from possessing firearms did not emerge until the twentieth century, these regulations evolved from comparable status-based restrictions dating back to the founding era. *Id.* ¶¶ 28-31.

¶ 30    Defendant nonetheless contends these historical predecessors are not a proper analogue for the permanent disarmament of felons under the UUWF statute because precursory dispossession regulations were traditionally temporary and easily removable. However, the UUWF statute is not an indissoluble ban on firearm possession. A felon can avoid the UUWF statute's application by obtaining relief under section 10 of the FOID Card Act (430 ILCS 65/10 (West 2018)). See 720 ILCS 5/24-1.1(a) (West 2018). Moreover, *Bruen*'s historical inquiry only requires the challenged regulation have "a well-established and representative historical *analogue*, not a historical *twin*." (Emphases in original.) *Bruen*, 597 U.S. at 30. Properly analogous modern and historical regulations are determined by their relative similarities, which include, *inter alia*, " 'how and why the regulations burden a law-abiding citizen's right to armed self-defense.' " *Travis*, 2024 IL App (3d) 230113, ¶ 24 (quoting *Bruen*, 597 U.S. at 29). The disarmament of felons under the UUWF statute based on their criminal convictions is consistent with a longstanding history and tradition of similar firearm prohibitions disarming individuals who engaged in criminal conduct or posed a danger to society. *Id.* ¶¶ 29-31. Like its historical antecedents, the UUWF statute imposes practically no burden on the second amendment rights of law-abiding citizens. *Id.* ¶ 33. Therefore, the UUWF statute is facially constitutional under the second amendment of the United States Constitution.

¶ 31    2. *Illinois Constitution*

9

¶ 32    Defendant further claims the UUWF statute violates article I, section 22, of the Illinois Constitution. Article I, section 22, provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22. In *Travis*, we held the UUWF statute is "a proper exercise of the state's police power, which allows the state to exert, through legislation, control over the dangers posed by firearms and the people who might use them to do harm." *Travis*, 2024 IL App (3d) 230113, ¶ 43. Thus, the UUWF statute is facially constitutional under article I, section 22, of the Illinois Constitution.

¶ 33    As discussed in *Travis*, we find it necessary to again reject the assertion that, by extending the right to bear arms to "the individual citizen," the Illinois Constitution provides greater protection than the right granted to "the people" under the second amendment. *Id.* ¶ 42. Indeed, the use of "individual citizen" broadens the scope of the type of arms covered by expanding it beyond weapons only traditionally used by a regulated militia. *Id.* ¶ 40. However, article I, section 22 also provides the state with an immense degree of control over firearms by explicitly limiting the right to bear arms subject to the police power. Ill. Const. 1970, art. I, § 22. The disarmament of felons under the UUWF statute is a proper exercise of this power, which contemplates legislation intended to prohibit or restrict anything that presents a danger to the welfare of the people. *Travis*, 2024 IL App (3d) 230113, ¶¶ 41, 43.

¶ 34    Accordingly, we adhere to *Travis* for these reasons and find the UUWF statute is facially constitutional under both the United States and Illinois Constitutions.[1]

¶ 35                                D. Sentence

---

[1]During the pendency of this appeal, the United States Supreme Court issued a decision in *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024), in which it upheld a federal statute that prohibited individuals subject to a domestic violence restraining order from possessing a firearm. We have reviewed *Rahimi* and conclude it does not change the above analysis.

10

¶ 36    Last, defendant argues the court improperly considered his vacated convictions as factors in aggravation when determining his sentence. Specifically, he asserts the court improperly considered (1) his 2007 and 2008 aggravated unlawful use of a weapon (AUUW) convictions, which were void under *People v. Aguilar*, 2013 IL 112116, and (2) the fact his probation sentence on the first AUUW conviction was revoked. Defendant contends he preserved this issue for our review by including it in his motion to reconsider the sentence. Although not raised by the State, we conclude defendant forfeited this claim because he did not raise it in his motion to reconsider sentence.

¶ 37    "[A] defendant forfeits appellate review of any sentencing issue not raised in the trial court in a written postsentencing motion." *People v. Lewis*, 234 Ill. 2d 32, 42 (2009). The purpose of this rule is two-fold. First, it allows the trial court an opportunity to review the defendant's claimed sentencing error and save the delay and expense of an appeal if the claim is meritorious. *People v. Heider*, 231 Ill. 2d 1, 18 (2008). Second, it prevents the defendant from raising on appeal a different objection than the one asserted below. *Id.*

¶ 38    Defendant's motion to reconsider the sentence did not argue the court improperly considered his vacated convictions in aggravation. Admittedly, the motion states the AUUW statute under which defendant was previously convicted had been found unconstitutional. However, that assertion is made as part of an argument that the State misled the grand jury and not in an argument attacking his sentence. Indeed, even if we liberally construe the motion, none of its contents gave the court the opportunity to review the claim defendant has now raised on appeal. Accordingly, defendant has forfeited this claim.

¶ 39    When a defendant forfeits appellate review of a claim, we may consider the claim if the defendant establishes a plain error occurred. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Defendant

11

does not argue for plain-error review or otherwise provide any reason why this court should excuse his forfeiture. See *People v. Hillier*, 237 Ill. 2d 539, 545-46, 550 (2010) (holding the appellate court erred by considering the merits of an unpreserved issue when the defendant did not argue plain error). Thus, we must honor defendant's procedural default.

¶ 40                                    III. CONCLUSION

¶ 41        For the reasons stated, we affirm in part and reverse in part the judgment of the circuit court of Will County.

¶ 42        Affirmed in part and reversed in part.