**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240214-U

Order filed March 24, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0214 Circuit No. 21-CF-2113 |
| SEAN ANDERSON, | ) ) ) | Honorable Ann Celine O'Hallaren-Walsh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BERTANI delivered the judgment of the court.
Presiding Justice Brennan and Justice Hettel concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:  The statute under which defendant was convicted is constitutional on its face and as applied to defendant.

¶ 2        Defendant, Sean Anderson, appeals his unlawful possession of a weapon by a felon (UPWF) conviction, arguing the UPWF statute criminalizing the possession of weapons by felons is unconstitutional both facially and as applied to him. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    The State charged defendant with attempted armed violence (720 ILCS 5/8-4(a), 33A-2(a) (West 2020)), attempted home invasion (*id.* § 8-4(a), 19-6(a)(1)), attempted residential burglary (*id.* § 8-4(a), 19-3(a-5)), and UPWF (*id.* § 24-1.1(a)). The underlying indictment for UPWF alleged that defendant possessed a firearm after being "previously convicted of Aggravated Vehicular Hijacking, a forcible felony." The facts adduced at a bench trial showed that Mary Ellen Milos and Dean Milos were at their residence on November 25, 2021. At approximately 5:30 p.m., Mary Ellen heard tapping on her patio door. Mary Ellen partially opened the door, and defendant began to lean into the house. Mary Ellen immediately closed and locked the door. When Mary Ellen asked defendant to identify himself and his reason for being there, defendant stated that he was with an energy company and needed to enter the home. Defendant was unable to give any specific information and was not wearing a uniform. When Dean approached the door, defendant continued to assert that he was with the energy company. At some point, Dean observed defendant reach into his pants and retrieve a handgun. Mary Ellen called 911 and defendant fled the scene. When police located defendant, he was on the ground with a loaded handgun under him.

¶ 5    The court found defendant guilty of UPWF. In doing so, the court found both witnesses credible and that defendant "falsely represented himself as a representative of the utility company." However, the court found that the State had not met its burden of proof for the offenses of attempted armed violence, attempted home invasion, and attempted residential burglary, and found defendant not guilty. The presentence investigation report (PSI) introduced at sentencing indicated that defendant had prior convictions for reckless conduct, resisting a peace officer, and aggravated vehicular hijacking with a weapon. The court sentenced defendant to nine years' imprisonment. Defendant appealed.

¶ 6                                                    II. ANALYSIS

2

¶ 7        On appeal, defendant asserts a facial and as-applied constitutional challenge to his UPWF conviction, in that it violated the second amendment because there is no evidence that the founders intended for a permanent revocation of an individual's right to keep and bear arms based on prior felony convictions.

¶ 8        We presume statutes are constitutional. *People v. Wells*, 2023 IL App (3d) 210292, ¶ 19. Whenever reasonably possible, we must interpret statutes to uphold their constitutionality. *Id.* Therefore, the challenging party bears the burden of establishing that a statute is constitutionally invalid. *People v. McKown*, 2022 IL 127683, ¶ 29. A statute is only facially unconstitutional "if no set of circumstances exists under which it would be valid." *Caulkins v. Pritzker*, 2023 IL 129453, ¶ 29. We review whether a statute is constitutional *de novo*. Wells, 2023 IL App (3d) 210292, ¶ 19.

¶ 9        The constitutionality of statutory firearm regulations is determined using a two-part analysis that first considers (1) if the conduct at issue falls within the plain text of the second amendment, and if so, (2) whether the statute is consistent with the nation's history and tradition of firearm regulations. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24, 26-27 (2022). In *United States v. Rahimi*, 602 U.S. 680, 691 (2024), the Court clarified, that "[t]hese precedents were not meant to suggest a law trapped in amber. *** [T]he reach of the Second Amendment is not limited only to those arms that were in existence at the founding." The Court continued, "when a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster. [Citation.] The law must comport with the principles underlying the Second Amendment, but it need not be a dead ringer or a historical twin."

(Internal quotation marks omitted.) *Id.* at 692. Notably, the Court emphasized that regulations prohibiting felons from possessing firearms remain presumptively lawful post-*Bruen*. *Id.* at 699.[1]

¶ 10        Initially, we note that we have previously upheld the constitutionality of the same statute defendant challenges.[2] *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 33, 37; *People v. Johnson*, 2025 IL App (3d) 240185-U, ¶ 9; *People v. Williamson*, 2024 IL App (3d) 230196-U, ¶ 29; *People v. Morales*, 2024 IL App (3d) 230433-U, ¶¶ 11-12; *People v. Sherrod*, 2024 IL App (3d) 230275-U, ¶¶ 9-11. Applying *Bruen*'s two-step framework, we first determine, as we have previously, that disarming felons falls within the plain text of the second amendment. U.S. Const., amend II; *Travis*, 2024 IL App (3d) 230113, ¶ 25 (the amendment's plain language guaranteeing the "right of the people to keep and bear Arms" covers the possession of firearms and does not exclude felons from "the people" to whom it applies (internal quotation marks omitted)).

¶ 11        Turning to the second step of the analysis, we must determine whether felon dispossession statutes are consistent with the country's history and tradition of disarming individuals that posed a risk of danger or criminality. *Travis*, 2024 IL App (3d) 230113, ¶¶ 27-33. In *Travis*, we determined that there is a historical analogue to the felon dispossession statutes. *Id.* ¶ 33. Defendant contends that the State cannot establish a historical analogue for UPWF where "there is no well-established and representative historical analogue for *permanently* barring felons from possessing firearms." (Emphasis added.) First, defendant overlooks *Travis*, 2024 IL App (3d) 230113, ¶¶ 27-33, which outlined the historical analogue for the disarmament of felons. The disarmament of felons under the UPWF statute based on their criminal convictions is consistent

---

[1]Defendant's factual reliance on *Rahimi*, 602 U.S. 680, is misplaced where the Court upheld a federal statute that prohibited individuals subject to a civil domestic violence restraining order from possessing a firearm, unlike the circumstances in the present case.

[2]*Travis* alternatively refers to the same singular offense codified under section 24-1.1 as UUWF. See *Morales*, 2024 IL App (3d) 230433-U, ¶ 12 ("Whether the offense is labeled UUWF or UPWF is a distinction without a difference.").

with a longstanding history and tradition of similar firearm prohibitions disarming individuals who engaged in criminal conduct or posed a danger to society. *Id.* ¶¶ 29-31. Like its historical antecedents, the UPWF statute imposes practically no burden on the second amendment rights of law-abiding citizens. *Id.* ¶ 33. Second, the UPWF statute is not an indissoluble ban on firearm possession, and therefore a felon can avoid the statute's application by obtaining relief under section 10 of the Firearms Owners Identification Card Act (430 ILCS 65/10 (West 2020)). See 720 ILCS 5/24-1.1(a) (West 2020). Therefore, we adhere to *Travis* and our subsequent case law and find the UPWF statute is facially constitutional under the second amendment of the United States Constitution.

¶ 12        Finally, we note that while defendant raised an as-applied constitutional challenge in his opening brief, he failed to support this claim with any argument. As a result, the State contends that defendant forfeited his as-applied challenge. In his reply, defendant responds that his previous conviction for aggravated vehicular hijacking with a weapon or his present UPWF offense did not require specific findings of dangerousness. See 720 ILCS 5/18-4(a)(3) (West 2018); 720 ILCS 5/24-1.1(a) (West 2020). Defendant failed to make a sufficient argument for his as-applied challenge, and thus, forfeited his claim. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); see also *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29 ("[a] reviewing court is entitled to have issues clearly defined with *** cohesive arguments presented; this court is not a repository into which an appellant may foist the burden of argument and research").

¶ 13        Even assuming, *arguendo*, that defendant had provided a cohesive argument, his as-applied challenge would fail. While the record does not contain any factual recitation of defendant's previous felony and misdemeanor offenses, defendant's PSI shows a prior conviction for felony aggravated vehicular hijacking with a weapon, resisting a peace officer, and reckless conduct. See

*Travis*, 2024 IL App (3d) 230113, ¶ 17 (considering an as-applied challenge to felon dispossession statutes for the first time on appeal). Moreover, the underlying facts of this case indicated that defendant displayed dangerous behaviors by falsely representing himself in an attempt to gain access to a residence while possessing a loaded firearm. Historical regulations reflect a tradition of disarming those that fail to abide by the law and defendant has demonstrated that he is not a law-abiding citizen as a repeat offender. See *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 100. The aforementioned provides reasonably reliable evidence of defendant's violent character. See *People v. Lynch*, 104 Ill. 2d 194, 201 (1984). Defendant has established, through his criminal conduct, that he is "precisely the type of person the government has historically and traditionally sought to disarm." *Travis*, 2024 IL App (3d) 230113, ¶ 36. Therefore, we hold that the UPWF statute is constitutional as applied to defendant.

¶ 14                                              III. CONCLUSION

¶ 15          The judgment of the circuit court of Du Page County is affirmed.

¶ 16          Affirmed.

6