**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230332-U

Order filed April 22, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0332 Circuit No. 21-CF-1319 |
| FREDERICK A. HOLMON, | ) ) ) | Honorable Mia S. McPherson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Anderson and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: (1) The State failed to present sufficient evidence regarding the defendant's concealed carry license or firearm owner's identification card status. (2) Sufficient evidence was presented to find constructive possession of ammunition. (3) The circuit court's determination that the defendant was subject to the sentencing range for armed violence with a category I weapon constituted plain error. (4) The unlawful possession of a weapon by a felon statute is facially constitutional under both the United States and Illinois Constitutions.

¶ 2    The defendant, Frederick A. Holmon, appeals from his convictions for armed violence, unlawful possession of a weapon by a felon (UPWF), aggravated unlawful use of a weapon

(AUUW), and unlawful possession of ammunition by a felon. The defendant argues that the State failed to present sufficient evidence to sustain his convictions for AUUW and unlawful possession of ammunition by a felon, the court erred in exposing him to the extended sentencing range applicable to armed violence with a category I weapon, and the UPWF and AUUW statutes under which he was charged are facially unconstitutional.

¶ 3                                    I. BACKGROUND

¶ 4        Relevant to this appeal, on August 10, 2021, the defendant was charged with attempted armed robbery (720 ILCS 5/8-4, 18-2(a)(2), (b) (West 2020)), two counts of UPWF (*id.* § 24-1.1(a), (e)), unlawful possession of ammunition by a felon (*id.*), two counts of armed violence (*id.* § 33A-2(a), 33A-3(a)), and AUUW (*id.* § 24-1.6(a)(1), (a)(3)(A-5), (C), (d)(3)). The case proceeded to a bench trial on April 14, 2023.

¶ 5        Brian Hill, a delivery driver for Breakthrough Beverage, testified that on July 27, 2021, at approximately 7:30 a.m., he had a delivery at the Jewel grocery store located on Ogden Avenue in Naperville. Hill testified that at one point during the delivery, he had unlocked his passenger door and forgot to relock it. After obtaining paperwork from the store manager, Rudolph Jones, Hill entered the driver's side door of the delivery truck and was startled by a man in black clothing holding a long black rifle approximately one-half inch from Hill's forehead. The man told Hill "to get in, get in, it's not worth [your] life." Hill identified the defendant in open court as the man he encountered in his truck. Hill fled from the truck and heard someone chasing him. Hill ran into the store and informed Jones of what had occurred. Jones called 911.

¶ 6        The State played two surveillance videos from the store for Hill. Hill identified his delivery truck, as well as a gold Suburban that Hill testified had been following him, drive across the parking lot. The footage showed Hill completing his delivery and returning to his truck. Shortly

2

thereafter, Hill could be seen running back into the building. Hill testified that the defendant, dressed in black, could be seen in the lower left of the video. Hill indicated that he eventually exited the store and observed the defendant heading toward the gold Suburban. The video depicted what appeared to be a firearm in the defendant's hands. Jones testified consistently with Hill.

¶ 7 Naperville police officer Kurt Siegmeyer testified that on the morning of July 27, 2021, he was dispatched to the store. Upon arrival, he spoke with Hill. Siegmeyer was notified that a vehicle matching Hill's description had been stopped by other Naperville officers. He took Hill to the traffic stop to "take a look at the people there and see if anybody was involved in his incident." Siegmeyer indicated that Hill identified one man as the individual with the rifle and identified the vehicle as the same gold Suburban he had observed during the incident.

¶ 8 Naperville police officer David Goodalis testified that he assisted with the traffic stop of the gold Suburban on the morning of July 27, 2021. The stop occurred approximately two miles from the store. Officers stopped the vehicle within 10 minutes of receiving the description from dispatch. The gold Suburban had three male occupants. Goodalis identified the defendant as the driver. He and two other officers searched the vehicle. They located a rifle in the rear of the Suburban, underneath a subwoofer enclosure. The rifle's markings indicated that it was a Kel Tec SUB2000 rifle. Photographs of the subwoofer and rifle were entered into evidence. Inside the subwoofer, officers located a pair of pants which contained a magazine with "at least 17 rounds of 9-millimeter" ammunition. Located inside another subwoofer enclosure, officers located a shirt with a loaded revolver wrapped inside.

¶ 9 The parties stipulated that the rifle trigger, revolver trigger, and revolver handle were swabbed for DNA. These swabs, and a sample of the defendant's DNA, were sent for testing. DNA from four donors was located on the rifle trigger. DNA profiles from a major donor were observed,

3

and one profile was consistent with the defendant's DNA. DNA obtained from the revolver was not suitable for comparison.

¶ 10    Sergeant Erin Gibler of the Naperville Police Department testified that she obtained search warrants for the cell phones of the defendant and another occupant of the Suburban. Location data from the cell phones showed that on July 27, 2021, the gold Suburban which the defendant was driving was located near Breakthrough Beverage in Cicero at 5:30 a.m. and followed Hill's truck from Cicero to Naperville. A text message on the defendant's phone at 8:15 a.m. read, "it's going down."

¶ 11    A certified copy of the defendant's prior felony conviction for failure to report as a sex offender was entered into evidence. The court found the defendant guilty on all counts.

¶ 12    At the sentencing hearing, the court determined that the convictions for attempted armed robbery and armed violence predicated on attempted theft would merge into the remaining count of armed violence. Additionally, the court determined that the UPWF for possessing the revolver would merge into the AUUW count. The court explained that each count the defendant was being sentenced on was not probation eligible and that the armed violence carried special sentencing provisions of 15 to 30 years' imprisonment. The court sentenced the defendant to 20 years' imprisonment on armed violence highlighting that while the defendant did not have a history of violent behavior, it found the instant offense was terrifying and very violent in nature in that he pointed a "large, semi-automatic weapon" at Hill's head. On the remaining convictions, the defendant received the minimum sentences of imprisonment: two years for UPWF with the rifle, two years for unlawful possession of ammunition by a felon, and three years for AUUW. The defendant filed a motion to reconsider sentence, which did not challenge the sentencing range of the armed violence conviction. The motion was denied. The defendant appealed.

4

¶ 13                                II. ANALYSIS

¶ 14         On appeal, the defendant challenges the sufficiency of the evidence presented to sustain

convictions for AUUW and unlawful possession of ammunition by a felon, arguing that the State

presented no evidence of whether the defendant possessed a valid firearm owner's identification

(FOID) card or concealed carry license (CCL) and contending that the evidence did not establish

either actual or constructive possession for the revolver and ammunition. Further, the defendant

asserts that the sentencing range for the armed violence conviction was erroneous where the State

presented no evidence to establish that the defendant possessed a semiautomatic rifle. Finally, the

defendant contends that his UPWF and AUUW convictions are facially unconstitutional. We

consider each argument in turn.

¶ 15                            A. Sufficiency of the Evidence

¶ 16         In a challenge to the sufficiency of the evidence, the relevant inquiry is "whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.)

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979). It is not the function of the reviewing court to retry

defendant. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). In reviewing the evidence presented, we

must "allow all reasonable inferences from that evidence to be drawn in favor of the [State]."

*People v. Martin*, 2011 IL 109102, ¶ 15. "A conviction will be reversed only where the evidence

is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the

defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 17                       1. Aggravated Unlawful Use of a Weapon

¶ 18         To sustain the defendant's conviction for AUUW, the State was required to show beyond

a reasonable doubt, *inter alia*, that the defendant possessed an uncased, loaded, and immediately

5

accessible revolver on or about his person or in a vehicle, without having been issued a CCL or FOID card (720 ILCS 5/24-1.6(a)(1), (3)(A-5), (3)(c) (West 2020)).

¶ 19    The parties agree and the record demonstrates that no evidence was presented regarding whether the defendant possessed a FOID card or CCL. Whether the defendant possessed a validly issued FOID card or CCL is an essential element of the offense. *People v. Diggins*, 2016 IL App (1st) 142088, ¶ 18. Where the State failed to prove this essential element, the conviction cannot stand. *People v. Wise*, 2021 IL 125392, ¶ 39. Therefore, we reverse the defendant's conviction for AUUW. Because we have determined that the evidence is insufficient based on the lack of evidence concerning a FOID card and CCL, we need not address the defendant's alternative argument regarding his possession of the revolver.

¶ 20                        2. Unlawful Possession of Ammunition by a Felon

¶ 21    The defendant argues that the evidence is insufficient to establish that he knowingly possessed the ammunition that was found in the subwoofer enclosure in the rear of the Suburban. "Possession may be either actual or constructive." *People v. Walker*, 2020 IL App (1st) 162305, ¶ 20. Where, as here, the defendant was not in actual possession of the ammunition, the State must show constructive possession. Constructive possession is generally shown through circumstantial evidence. *Id.* To establish constructive possession, the State must show that the defendant knew of the ammunition's presence and exercised immediate and exclusive control of the area where it was found. *Wise*, 2021 IL 125392, ¶ 25.

¶ 22    Here, the evidence, viewed in the light most favorable to the State, demonstrates that the defendant and his passengers planned to commit armed robbery, stealing a delivery truck at gunpoint. The defendant drove the Suburban from Cicero to Naperville, where he ultimately pointed a rifle at Hill's head. When the Suburban was subsequently stopped and searched, the rifle

was located in the trunk, under a subwoofer. The evidence supports a reasonable inference that, after Hill fled, the defendant returned to the Suburban, entered the trunk of the vehicle, and hid the rifle underneath the same subwoofer where the ammunition had been hidden. It is reasonable to infer that the defendant, when planning to commit armed robbery, knew what items he might need, including firearms and ammunition. Further, it is clear the defendant had control over the area and items. The fact that the defendant drove the vehicle, by itself, would be insufficient to establish constructive possession. See *id.* ¶ 28. However, in addition to being the driver of the vehicle, the defendant also had access to the trunk, and in fact accessed it to hide his rifle when fleeing the store. A defendant's control over the location where contraband is found gives rise to an inference that the defendant knew of and possessed them. *People v. Givens*, 237 Ill. 2d 311, 335 (2010).

¶ 23        In coming to this conclusion, we reject the defendant's argument that he did not have constructive possession of the ammunition because it was not visible from his perspective, in the rear of the Suburban, and there were two other occupants in the vehicle. Evidence that the defendant could see the ammunition or immediately grab it is not necessary to establish constructive possession. "Knowledge may be shown by evidence of a defendant's acts, declarations, or conduct from which it can be inferred that he knew the contraband existed in the place where it was found." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Even though the ammunition was not visible, the defendant's conduct supports an inference that he had knowledge of it. Additionally, the presence of other individuals in the vehicle does not negate exclusive control. See *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000) ("The rule that possession must be exclusive does not mean that the possession may not be joint [citation]; if two or more persons share immediate and exclusive control or share the intention and power to exercise control, then each has possession."). Accordingly, we conclude that the evidence, in the light most favorable to

7

the State, is sufficient to sustain the defendant's conviction for unlawful possession of ammunition by a felon.

¶ 24                                      B. Improper Sentencing Range

¶ 25         The defendant contends that the court erred in sentencing him to 20 years' imprisonment for armed violence where it used the incorrect range of 15 to 30 years' imprisonment when he should have been subjected to a range of 10 to 30 years' imprisonment. He acknowledges that he did not preserve the error for appeal but requests plain error review. The State concedes that plain error occurred. The defendant correctly contends that where the fact that he used a semiautomatic rifle was employed to increase the sentencing range, that fact must be submitted to the trier of fact and proven beyond a reasonable doubt. See *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Alleyne v. United States*, 570 U.S. 99, 103 (2013) (extending the *Apprendi* rule to an increase in the mandatory minimum sentence). *Apprendi* errors are reviewable under the first prong of the plain error analysis. *People v. Jones*, 2016 IL 119391, ¶ 10. Accordingly, the defendant is required to prove that a clear and obvious error occurred and that "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against" him. *Id.* "There is no prejudice, and thus no plain error, from an alleged *Apprendi* violation if undisputed evidence shows that the State could have proven the sentence-enhancing facts beyond a reasonable doubt." *People v. Gully*, 2020 IL App (1st) 180275, ¶ 22. The first step of the plain error analysis is to determine whether an error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 26         Here, the State presented no evidence at trial or the sentencing hearing that the Kel Tec SUB2000 rifle that the defendant used was a semiautomatic rifle. Because no evidence was presented regarding the nature of the rifle, it could not be considered a category I weapon. See 720 ILCS 5/33A-1(c)(2) (West 2020) (semiautomatic firearms are considered category I weapons

8

whereas all other types of rifles are considered category II weapons). Thus, clear and obvious error occurred.

¶ 27 Next, we consider whether the error prejudiced the defendant. The State had two opportunities, at trial and sentencing, to present evidence of the nature of the rifle used by the defendant and did not. No undisputed evidence exists in the record to establish that the rifle was semiautomatic. Even so, the court expressly used the fact that the rifle was a semiautomatic to raise the mandatory minimum sentence from 10 to 15 years' imprisonment. See *id.* § 33A-3(a), (a-5). Further, the court mentioned the fact that the defendant pointed a "large, semi-automatic" rifle at Hill in aggravation when sentencing the defendant to 20 years' imprisonment. Therefore, the defendant was prejudiced by the error. Accordingly, we accept the State's concession of error, vacate the defendant's sentence for armed violence, and remand for resentencing.

¶ 28 The defendant requests this court vacate his remaining sentences and remand for resentencing on all his remaining convictions as it cannot be determined whether the vacated conviction contributed to the sentencing decision. However, remand is unnecessary where the court imposed the mandatory minimum sentence on each remaining conviction and the court made no mention of the revolver or ammunition during sentencing, focusing solely on the defendant's armed violence conviction. See *People v. Payne*, 98 Ill. 2d 45, 57 (1983) (remand for resentencing is not necessary where separate sentences are imposed for each of multiple convictions, some of which are vacated on appeal, and there is no indication in the record that the sentencing court took into account the conviction being vacated in determining the length of the sentence for the remaining offense). Accordingly, on remand the court must sentence the defendant on the previously merged count of UPWF and resentence the defendant on armed violence, employing

9

the correct sentencing range for a category II weapon of 10 to 30 years' imprisonment. The defendant's remaining sentences are affirmed.

¶ 29                                    C. Constitutionality

¶ 30        Finally, the defendant asserts that his convictions for UPWF are facially unconstitutional under both the United States and Illinois Constitutions. Specifically, the defendant argues that the status-based prohibition on felons possessing firearms has no historical analogue. Further, the defendant argues that his conviction for AUUW is facially unconstitutional, however, we note that we have already reversed the defendant's AUUW conviction for insufficient evidence. *Supra* ¶ 19. We reach constitutional issues "only as a last resort," and we analyze such questions only insofar as they are strictly necessary to decide a case. *In re E.H.*, 224 Ill. 2d 172, 178 (2006). Therefore, we need not consider the constitutionality of the AUUW statute and solely focus on UPWF.

¶ 31        Statutes are presumed to be constitutional. *People v. Wells*, 2023 IL App (3d) 210292, ¶ 19. We must interpret statutes to uphold their constitutionality whenever reasonably possible. *Id.* Therefore, the challenging party bears the burden of establishing that a statute is constitutionally invalid. *People v. McKown*, 2022 IL 127683, ¶ 29. A facial challenge to the constitutionality of a statute requires a showing that the statute is unconstitutional under any set of facts, thus, the existence of any situation where the statute could be validly applied will cause the challenge to fail. *People v. Rizzo*, 2016 IL 118599, ¶ 24. We review whether a statute is constitutional *de novo*. *Wells*, 2023 IL App (3d) 210292, ¶ 19.

¶ 32        In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 26-27 (2022), the United States Supreme Court enumerated a two-pronged analysis for evaluating the constitutionality of statutory firearm regulations. First, we must determine whether the conduct at issue is protected under the plain text of the second amendment. *Id.* If we determine that it is, we then must consider

10

whether the regulation justifiably comports with history and tradition. *Id.*; *People v. Travis*, 2024 IL App (3d) 230113, ¶ 24. While the challenged regulation must comport with the principles underlying the second amendment, "it need not be a dead ringer or a historical twin." (Internal quotation marks omitted.) *United States v. Rahimi*, 602 U.S. 680, 692 (2024). Notably, the Court emphasized that regulations prohibiting felons from possessing firearms remain presumptively lawful post-*Bruen*. *Id.* at 699.

¶ 33        Applying *Bruen*'s two-step framework, we reiterate that disarming felons falls within the plain text of the second amendment. U.S. Const., amend. II; *Travis*, 2024 IL App (3d) 230113, ¶ 25 (the amendment's plain language guaranteeing the "right of the people to keep and bear Arms" covers the possession of firearms and does not exclude felons from "the people" to whom it applies (internal quotation marks omitted)).

¶ 34        Considering the second prong of the analysis, we must next determine whether felon dispossession statutes are consistent with our country's history and tradition of disarming individuals that posed a risk of danger or criminality. *Travis*, 2024 IL App (3d) 230113, ¶¶ 27-33. Our historical analysis in *Travis* demonstrated that there is a historical analogue to the felon dispossession statutes. *Id.* ¶ 33. The defendant contends that the State cannot establish a historical analogue for UPWF where the laws it cites are either prejudicial and discriminatory and not related to criminal status or unconvincing as convicted criminals pose no existential risk to the United States. However, these historical precedents need only comport with second amendment principles, not be an exact match, law for law. "In colonial America, legislatures continued to disarm individuals whose status indicated that they could not be trusted to obey the law." *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 94. Previously, in *Travis*, 2024 IL App (3d) 230113, ¶¶ 27-33, we outlined the historical analogue for the disarmament of felons. We adhere to our prior

11

conclusion that the disarmament of felons under the UPWF statute based on criminal convictions is consistent with a longstanding history and tradition of similar firearm prohibitions disarming individuals who engaged in criminal conduct or posed a danger to society. *Id.* ¶¶ 29-31. Like its historical antecedents, the UPWF statute imposes practically no burden on the second amendment rights of law-abiding citizens. *Id.* ¶ 33. Further, the ban is not absolute. Any person who is prohibited from possessing a firearm under section 24.1-1 of the Criminal Code of 2012 may petition to obtain relief from the prohibition pursuant to section 10 of the FOID Card Act (430 ILCS 65/10(c) (West 2020)). See 720 ILCS 5/24-1.1(a) (West 2020). Therefore, we determine the UPWF statute is facially constitutional under the second amendment of the United States Constitution.

¶ 35    Next, the defendant contends the UPWF statute is facially invalid under article I, section 22 of the Illinois Constitution. Article I, section 22, provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22. As discussed in *Travis*, we reject the defendant's claim that by extending the right to bear arms to "the individual citizen," the Illinois Constitution provides greater protection than the right granted to "the people" under the second amendment. See *Travis*, 2024 IL App (3d) 230113, ¶¶ 40, 42. While the use of the phrase "individual citizen" broadens the scope of the type of arms covered by expanding it beyond weapons only traditionally used by a regulated militia, the prefatory clause grants the government a measure of control over the use of firearms. *Id.* While the Illinois Constitution cannot be less protective of rights than the United States Constitution (see *People v. Mata*, 217 Ill. 2d 535, 546-47 (2005)), the prohibition on felons possessing firearms is constitutional under the federal constitution. Accordingly, the disarmament of felons under the UPWF statute is a proper exercise of police power, which contemplates legislation intended to

12

prohibit or restrict anything that presents a danger to the welfare of the people. *Travis*, 2024 IL App (3d) 230113, ¶¶ 41, 43.

¶ 36                                III. CONCLUSION

¶ 37        The judgment of the circuit court of Du Page County is affirmed in part, reversed in part, vacated in part, and remanded for resentencing.

¶ 38        Affirmed in part, reversed in part, vacated in part, and remanded.